**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **REINA MATEO ALVARADO** | **CIVIL NO.:** |
| Plaintiff, | **RE: TITLE VII; GENDER DISCRIMINATION; AND RETALIATION** |
| vs. | |
| **TELEVICENTRO OF PUERTO RICO, LLC. d/b/a WAPA TV CHANNEL 4; AXIS INSURANCE COMPANY; ABC INSURANCE COMPANIES, DEF UNKNOWN DEFENDANTS** | **REQUEST FOR SUMMARY PROCEEDINGS UNDER 42 U.S.C. § 2000e-5(f)(5)** |
| | **PLAINTIFF DEMANDS TRIAL BY JURY AND PUNITIVE DAMAGES** |
| Defendants. | |

# C O M P L A I N T

**TO THE HONORABLE COURT:**

　　**COMES NOW** Plaintiff Reina Mateo Alvarado ("Mateo"), through her undersigned counsel and very respectfully **ALLEGES, SOLICITS** and **PRAYS**:

## I.　　NATURE OF THE ACTION AND JURISDICTION

　　1.　　Plaintiff Mateo invokes this Honorable Court's federal question subject matter jurisdiction under 28 U.S.C. § 1331 for this action seeking compensatory damages, equitable and injunctive relief, costs and attorney's fees brought forth pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.* as a result of Defendant Televicentro of Puerto Rico, LLC. d/b/a WAPA TV, Channel 4's ("Televicentro" or "WAPA TV") continuous unlawful and willful employment practices (gender discrimination and retaliation) which lead to multiple violations of Mateo's civil rights because she engaged in several statutorily protected activities under Title VII, and

Puerto Rico Law No. 115, 29 L.P.R.A. §§ 194-194b.  Such discrimination and retaliation has caused severe emotional, mental, and economic damages for Mateo.

2.    Plaintiff Mateo further asserts this Honorable Court's supplemental jurisdiction under 28 U.S.C. § 1367 to hear and decide those claims arising under the Commonwealth of Puerto Rico's laws invoked herein because such claims arise from the same nucleus of operative facts giving rise to Mateo's claims under federal law.  Mateo invokes supplemental jurisdiction for this Honorable Court to hear and adjudicate her claims against all named party defendants arising under the following Puerto Rico Laws: Act No. 115 of December 20, 1991, 29 L.P.R.A. §§ 194 *et seq.*; Act No. 100 of June 30, 1959, 29 L.P.R.A. §§ 146, *et seq. ;* and Act No. 69 of July 6, 1985, 29 L.P.R.A. §§ 1321-1341.

3.    On or about October 2, 2025, Mateo timely filed an administrative Employment Discrimination and Retaliation Charge with the Equal Employment Opportunity Commission ("EEOC"), Case No. 515-2025-00189, claiming gender discrimination, as well as retaliation against his current employer, WAPA TV.

4.    Subsequently, on April 3, 2025, Mateo filed an Amended Charge with the EEOC.

5.    Mateo seeks redress for the damages she suffered and continues to suffer as a result of WAPA TV's continuous unlawful employment discrimination on the basis of Mateo's  gender, and for retaliation because she engaged in various statutorily protected activities by opposing unlawful employment practices, among other activities described herein below.

6.    Mateo was retaliated after she grieved to her supervisors and other WAPA TV personnel that she had been the victim of gender discrimination at her workplace and because WAPA TV woefully failed to remedy such egregious gender discrimination as required by Federal and Commonwealth of Puerto Rico laws.

7.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) (1), (2). Venue is proper in this district because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this judicial district of Puerto Rico.  28 U.S.C. § 1391(b).

8.    Mateo hereby specifically invokes 42 U.S.C. § 2000e-5(f)(5) to request that his Title VII claims in this case to be in every way expedited.

9.    On July 28, 2025, the EEOC issued its Notice of Right to Sue in this case.

## II.  THE PARTIES

10.    Mateo is a female citizen of the United States of America, of legal age, single and resident of Coamo, Puerto Rico.

11.    At all relevant times of the facts alleged in this Complaint, Mateo was an employee within Title VII's protected classes.

12.    At all the relevant times of the facts alleged in this Complaint, Mateo was an "employee" within the definition of such terms as defined by Title VII, 42 U.S.C. § 2000e(f) and the Commonwealth of Puerto Rico laws that have been invoked herein.

13.    Defendant WAPA TV is a corporation organized under the laws of the Commonwealth of Puerto Rico and has its principal place of business in Guaynabo, Puerto Rico.  WAPA TV owns and operates a local Puerto Rican television channel, Canal 4.

Complaint
Mateo Alvarado v. WAPA TV *et al.*
Page 4 of 22

14.     Defendant WAPA TV is considered a "person" within the meaning of such term as provided by Title VII, 42 U.S.C. § 2000e(a) and is engaged in an "industry affecting commerce" within the meaning of such term as provided by Title VII, 42 U.S.C. § 2000e(h).

15.     At all times relevant to this Complaint, WAPA is an "employer" within the meaning of such term as provided by Title VII, 42 U.S.C. § 2000e(b) and the laws of Puerto Rico that have been invoked herein.

16.     At all times relevant to this Complaint, WAPA employed fifteen (15) or more employees.

17.     At all times relevant to this Complaint, WAPA was Mateo's employer, and Mateo was WAPA TV's employee.

18.     Defendant Axis Insurance Company has an insurance policy which at all times relevant hereto, was in full effect and covers the liabilities and/or unlawful acts which were committed by Defendant WAPA TV.

19.     Defendants ABC Insurance Companies have insurance policies which at all times relevant hereto, were in full effect and cover the liabilities and/or unlawful acts which were committed by the defendants herein mentioned.

20.     Plaintiff Mateo is using the fictitious names of ABC Insurance Companies because at this time she does not know the real names of such insurance companies. Once the real names become known, Mateo will substitute those fictitious names with the real names of such party defendants.

21.     Defendants DEF are other parties that have engaged in unlawful acts against Mateo.  Plaintiff Mateo is using the fictitious names of DEF because at this time

she does not know the real names of such party defendants.  Once the real names become known, Mateo will substitute those fictitious names with the real names of such party defendants.

22.    All defendants have received actual knowledge of Mateo's administrative charge, and its amendments filed claiming sex/gender discrimination and retaliation, which were administratively filed before the EEOC.

23.    All Defendants have jointly participated in continuous acts of unlawful employment discrimination and retaliation against Mateo on account of her gender, and because Mateo engaged in statutorily protected activity by grieving, denouncing, and opposing unlawful employment practices in violation of Federal and Puerto Rico laws.

24.    All defendants are jointly liable for the damages caused to Plaintiff Mateo.

### III.    FACTUAL NARRATIVE COMMON TO ALL CLAIMS

25.    Mateo has been a news reporter with over ten (10) years of experience in all aspects of news media, including the press, radio and more recently, television. Mateo is currently twenty (29) years old.

26.    During the month of June 2018, Mateo commenced working for Televicentro de Puerto Rico, LLC. ("Televicentro"), who owns and operates WAPA TV, Channel 4, a local Puerto Rican television channel, after having concluded her practice in its News Department as an Associate Producer in the "Noticentro al Amanecer" Program. Mateo started working at Televicentro covering a fellow employee's maternity leave. Thereafter, during September 2018, she was promoted to the Production Assistant position.

27.    While Mateo was assigned to this position, she  performed with excellence all the editions and timetables that were assigned to her until July 2021, when the then

News Director, Rafael Lenín López, appointed Mateo as News Reporter, position that she successfully occupied since July 16, 2021 until December 27, 2024, date on which she was unlawfully terminated from her employment.

28.    As the ultimate retaliatory act perpetrated by WAPA TV, on December 27, 2024, Mateo was unlawfully terminated from her employment due to her gender and in retaliation because she had previously participated in several statutorily protected activities by complaining to Televicentro's agents about gender discrimination and other terms and conditions of her employment. On such date, Mateo was abruptly terminated without any written or verbal warning.

29.    On December 27, 2024, Mateo was summoned by Mr. Edgardo Sanabria to the Human Resources' Conference Room along with Mrs. Veronica Morales and Melvin Orozco, a UPAGRA Union Delegate, where she was informed that she was being dismissed allegedly due to "various recent incidents that affected the airing of the program." According to Sanabria, there were two (2) purported incidents that prompted her termination of employment as News Anchor in the "Noticiero al Amanecer" program.

30.    However, following these purported events, WAPA TV failed to follow the mandatory procedures as established by the Union. These alleged "incidents," included, but are not limited to, a reiterated pattern of gender discrimination and retaliation perpetrated by management officials of the News Department against Mateo.

31.    On August 17, 2023, after fellow News Reporter Sylvia Verónica Camacho left the "Noticentro Fin de Semana" news program and her News Anchor position became vacant, both Mateo's colleague Jamiebeth González and Mateo were summoned to undergo an "on camera" evaluation. Both of them, along with Felipe Gómez, underwent

such evaluation. After completing this evaluation, the three of them were advised that they would be later informed of its results. However, weeks went by, and they were not notified of the evaluation's outcome.

32.     Subsequently, Mateo approached Mrs. Niria Ruiz, the News Director, to inquire as to why she had not been not informed of the results of her "on camera" evaluation, and she informed her that she was not selected for the position previously occupied by Sylvia Verónica Camacho, because "She looked to young, too girly ("muy nena") to be next to Felipe" while adding that Felipe Gómez would look too much older if Mateo where to be by his side.

33.     Mateo left this meeting confused and perplexed because her "on camera" evaluation was good and was not given the job because she was "too young." A few days later the position was given to a female news reporter Luisa Benitez, who is older than Mateo.

34.     During November 2023, Mateo  received an offer of employment by Telemundo de Puerto Rico, local TV Channel Two (2) for a News Reporter Anchor position for the "Telenoticias Fin de Semana" edition. Mateo initially accepted such job offer and when she was about to tender her letter of resignation to Televicentro, Mrs. Niria Ruiz requested her not to resign and made a series of promises in order to retain Mateo (many which were not fulfilled) among them, offering her the Anchor position for the first edition of the "Noticiero al Amanecer," along with the complete edition in those cases when it was necessary to cover News Reporter Monika Calendaria's vacations.

35.     However, despite Mrs. Ruiz' promises, Edgardo Sanabria was named Journalistic Director. Mateo was replaced by Jorge Gelpí Pagán. When Mateo

approached him to ask and talk to him about her agreement with Mrs. Ruiz, he informed Mateo that he had no knowledge of this agreement or of the contracts with other reporters. Mateo then phoned  Mrs. Ruiz but her call was sent to her voice mail and Ruiz did not return her call.

36.     From that date forward, Mateo was never given the news anchor position despite Ruiz' promises, unless it was for an unforeseen event or to cover for other news reporters who were absent. It had been WAPA TV's past practice for years that in the "Noticiero al Amanecer" program the reporter for the 4:00 am shift was to be the News Anchor for 5:00 am, before he or she left to work outside the station. Before Mateo, Aixa Vázquez, Mónika Candelaria and Maricarmen Ortiz anchored this morning program. When it was Mateo's turn to anchor, this prior practice was eliminated without explanation.

37.     On January 9, 2024, Mateo was assigned to go to the Puerto Rico Police Department's Headquarters to follow up on a news story involving a femicide-suicide that had occurred just hours before.  All "live" newscasts were done and a recorded intervention for the 9:00 am news spot was sent to the TV station.  This specific recording was not reviewed by the news producers before it was aired, as is required by WAPA TV's standard procedure.

38.     The procedure established by the station requires that prior to airing, all video and audio recordings need to be approved by the Producer, which in this case was Ileana Rodríguez.  Thus, the recording was accidently aired with the following phrase "me cago en la madre."  As a result, Mateo was mocked and ridiculed by her peers and was suspended without pay for three (3) days, while a fellow similarly situated male photojournalist, for purportedly the same conduct that Mateo was charged with, was only

Complaint
Mateo Alvarado v. WAPA TV *et al.*
Page 9 of 22

given a written disciplinary memorandum, which was later removed from his personnel file. As such, Mateo was subject to discriminatory disparate treatment based on gender. Ms. Rodriguez was not admonished or disciplined by this incident, and she continued as Senior Producer.

39.    On February 29, 2024, a union picket like took place in front of WAPA TV where a majority of the news reporters participated. Some of the news reporters that did not participate in this picket line, received preferential treatment while those who like Mateo participated, were subject to retaliation and their presence in the "Noticiero" was limited, including Mateo's job advancement opportunities.

40.    On July 7, 2024, Mateo received a phone call from Danishka Bonano, from WAPA TV's Information Desk, inquiring if she could work overtime that afternoon as a street news reporter; Alanis Quiñones would be anchoring, and a reporter was needed for the T Mobile District. Mateo inquired if she was the anchor why wasn't Alanis being sent to report while Mateo remained on the set. Mateo was informed that these were Niria Ruiz' instructions. However, when Mateo phoned Ruiz she "forgot" that Mateo was anchor, even though she signed the contract with Mateo. Later she recognized that Mateo should be anchoring and that she should remain on the set reporting along with Luisa Benítez.

41.    On August 14, 2024, during the passage of Tropical Storm Ernesto, WAPA TV activated a "work plan" for those reporters in the News Department and Mateo was assigned to report from the Fajardo, Puerto Rico area during the evening along with Carlos Moctezuma, a photojournalist. Notwithstanding these instructions, at about 3:00pm Mateo received a phone call from Edgardo Sanabria instructing her that she

should report to the station at 10:00pm to anchor a "special edition" along with Pedro Rosa Nales from 11:00 am until 2:00am and thereafter to report in for her regular shift at 4:00am without rest before starting her work shift. Mateo was later assigned to the Humacao, Puerto Rico region and then, later to the Governor's press conference. Mateo was required to report on this conference just in case and left a news PKG; however, this news story was never used by the station.

42.    During the Elections held on November 5, 2024, Mateo reported in to work as usual and after the live interviews of the "Noticentro al Amanecer", she was ordered to remain at the Puerto Rico Elections Commission, but she was never called upon to go on the air. Mateo sent a "lot" (Live on Tape) and was required to go to Caguas to perform an "empujaíto" as Deyaneira Perea termed it, since the President of the Puerto Rico Senate was there and he would be later that same afternoon, at the Capitol building and would be opening it for the news reporters.

43.    For this event, Mateo's photojournalist, Eriberto Mercado, stated to her that he could not go and cover this event since he had to go vote and Mateo was then assigned a new cameraman. Once Mateo arrived, Mateo had to telephone six (6) times the news producers so as to be able to go on the air with the guest to be interviewed. Once they were live for the interview after stating "good morning," Mateo was ordered to cancel the interview and terminate the live broadcast. After the "live" interview, Mateo sent a recording of a Popular Democratic Party volunteer to the station, but she never heard back from the news producers or from the TV channel.

44.    Upon Mateo's arrival to WAPA TV, she went to the news desk to be given her  next assignment and was told that "there wasn't anything more, and that she could

leave." Around 2:00pm on Election Day, WAPA TV had hired contract personnel that did go on the air, while Mateo as Televicentro employee, was sent home on Reuel Torres' instructions.

45.    On November 6, 2024, the day after the elections, Mateo was assigned to the Puerto Rico Elections Commission to monitor the electoral process. After she had several news interventions and collected multiple interviews, this news story was taken from her and given to her colleague Felipe Gómez, something that happened several times a week, both with him and with other male colleagues.

46.    On December 17, 2024, following the departure of colleague Julio Rivera Saniel from the TV news program shift, Mateo met with Mrs. Niria Ruiz to express her interest in a schedule change, because she was interested in performing other types of news stories. However, Mateo's request was received with a resounding "no", despite the fact that she had the seniority and experience to report on the topics covered in that schedule. Ruiz replied that Mateo belonged in the "Noticiero al Almanecer" program and that the most she could do was to assign her to work two (2) days per week from 7am to 4pm to cover "other stories." Mateo informed Ruiz that she was interested in covering other events or matters and Ruiz replied that was being covered on the "Noticiero al Amanecer" shift were murders and that she could take her on those two (2) days so Mateo could cover other news.

47.    During their conversation, Ruiz recognized Mateo was an excellent employee, reporter, anchor and the production team was very pleased with her work. Ruiz also stated that Mateo was also being considered by Jorge Hidalgo, President of WAPA-TV, as the new anchor for the Noticentro Al Amanecer Fin de Semana project (that never

happened).  Therefore, she did not approve Mateo's request for a new shift, limiting her professional growth in other areas.

48.     During the month of December of every year as usual, WAPA TV's News Department works on a summary of the most important newsworthy events that took place during the past 12 months. In fact, because of Mateo's shift, most of the topics that she covered were murders and traffic accidents. Both of these topics for the yearly news summary were assigned to men, one of them joked to Mateo in the middle of the newsroom, that she should do it. "Do you want it, so I don't have to do this?" he asked Mateo, laughing.

49.     According to a conversation held on December 27, 2024 with Mr. Sanabria, he informed Mateo that she was being terminated from her employment based on several alleged events that took place between December 19 and 20, 2024.

50.     On December 19, 2024, as customary, Mateo began her work shift at 4:00am. On that day, she was assigned to cover "Misa de Gallo" at Saint Paul the Apostle's Parish in Caguas, Puerto Rico  where she broadcasted live from 5:00 to 5:30am. Later at 6:00am, the news crew was sent to the Carolina Superior Court to preview the start of a trial there. On the way there, Mateo was told that they were going to drive by "a fatal accident that was not confirmed, but that it was on social media," according to Deyaneira Perea Rivera, from WAPA TV's Information Desk. The news crew was directed to travel the entire Campo Rico Avenue to look for said accident, which was not confirmed, and they did so.

51.     At 7:00am, Mateo and the news crew were sent a message about news developing in Corozal and that they should proceed there. Mateo informed Perea Rivera

that she couldn't work during her meal period, and she responded that they would resolve this matter today, but that the next time, Mateo must notify, Ana María, WAPA TV's Personnel Director. It should be noted that this day, there was a camerawoman on duty from 5:00am and another work team that came in at the same 7:00am, however, WAPA TV's News Department decided to send the 8:00am team.

52.    After Mateo's meal period, she was assigned another news story at the Capitol building which was duly covered and worked live at 11:00 am along with a sound note for the "Edición Estelar" program.  Mateo was never summoned for a verbal or written warning involving this incident, which Mr. Sanabria later explained to her was allegedly the motivating factor in her unlawful termination of employment due to her gender and in retaliation because she had engaged in statutorily protected activity. As a matter of fact, at the time of Mateo's discriminatory  dismissal, Mr. Sanabria stated that because Mateo grieved that she refused to go, (which is completely false) the station's airtime was compromised.

53.    During the week of December 20, 2024, Mateo wrote to the FBI's Press Spokesperson, Limary Cruz Rubio, to request an interview with the head of the FBI in Puerto Rico for an end-of-year report to review the achievements of this agency in 2024. Once this interview was confirmed, Mateo notified the WAPA TV's News Department, but far from making themselves available to address this matter, they scolded Mateo and put obstacles in her way for this interview.

54.    Such FBI interview was actually performed, and WAPA TV's News Department forced Mateo to do it and leave it ready for air the very day that she was terminated from her job. Mateo does not know if this interview was actually aired. One the

date of this interview, Mateo had to go to Reuel Torres to have him assign her a cameraman and he reluctantly gave Mateo one and he had to borrow the camera lights from Kike Jiménez.

55.    In fact, it was common practice that when reporters are offered stories, arrangements are made so that they turn out well, in Mateo's case it was just the opposite.

56.    On December 20, 2024, Noticentro presented a "special coverage" on the occasion of the court hearing in the case of Ramón Ayala "Daddy Yankee" and his wife Mireddys González. Mateo was assigned from 4:00 am to the San Juan Judicial Center and the interventions were made at 5:00am, 5:30, 6:00, 6:30, 7:00, 7:30, and 8:00 am.

57.    At the end of this intervention, at 8:07am, Mateo called twice to ask for instructions from Ms. Danishka Bonano, from WAPA TV's station's information desk, but she did not respond. Later on, Mateo called Mr. Reuel Torres on his cell phone to ask him what his instructions were as to whether to stay or break for the meal period, but he did not answer immediately. Torres then returned Mateo's call at 8:15am, in this case, from the station's phone number and asked what was happening there.  She replied that there was movement from other channels, like Channel 11 (Tele Once) and Channel 2 (Telemundo), and that there were even production cars arriving at the Courthouse. Torres then replied: "Kikito is already on his way, return to the station and have lunch." The TV crew picked up the equipment and returned to the station.

58.    When they were parking the bus at WAPA TV, they received the "push" notice from Telemundo that Mireddys González arrived at the court and minutes later, that Daddy Yankee had arrived. Mateo and her crew were never given any new

instructions to return, in fact, they were never told anything about this matter, even though they were at the station.

59.    At 10:00 am, when Mateo and the news crew returned from lunch, they went to the Superior Court to hold the 11:00 am news interview with Attorney Osvaldo Carlo. When they finished, they were instructed to stay at the courthouse. At 12:15pm, Mateo called Mrs. Bonano again to see if they would be relieved or if they should remain there. Mateo was requested to stay and "stand by" because at any moment the Court's ruling would be handed down and notified.

60.    Eventually, Daddy Yankee left the courthouse, and Mateo and the crew managed to interview him for about 5-7 minutes. Despite all the effort, this interview was not aired because according to WAPA TV "they never saw them in the frame." Later on, Mateo and her crew returned to the TV  station, and no one spoke to Mateo about what had happened, nor was there any written warning and Mateo had been ordered by Reuel Torres to leave the courthouse. These incidents, as they were explained to Mateo, were the purported pretextual reason for her employment termination. Although Mateo was fired for these events, her cameraman, an older man, was only given a memo several days later for the same incident and was not terminated from his employment.

61.    Subsequent to Mateo's interview of Daddy Yankee, she became aware that at the time of Daddy Yankee's arrival in Court, her colleague Felix Enrique Latorre, her replacement, was already at the court, and he did not turn on the "live u", a device used to transmit to the TV channel. Given this, although the images were recorded, they were never seen "live." This male colleague was never reprimanded due to this failure to turn on the transmission, yet Mateo was fired for following a job instruction.

62.     Prior to her unlawful and discriminatory termination of employment, it had become common practice that employees, who had complained about their employment conditions, were sanctioned and retaliated against with changes in their work schedules, or other penalties. When a male colleague was charged that he was misusing his authority, his side of the story was not heard, as happened with Mateo's job termination.

63.     Subsequently, Mateo learned Reuel Torres wrote a document where he put his point of view about what happened and never asked Mateo for her version of the events. There was no proper personnel investigation from the directors of the News Department, nor the Human Resources Department, violating her rights as a worker. Torres' version and Ileana Rodríguez' allegations were simply accepted as true, even though they were not. After being unlawfully terminated from her job, without Mateo's consent, WAPA TV continued using Mateo's photographs and other promotions including "Amanece en tu Pueblo" to promote those programs she had worked in and for the 2024 Year End summary of the news.

64.     Other unlawful discriminatory acts perpetrated against Mateo due to her gender include that despite being a news reporter in the Noticentro al Amanecer program for almost four (4) years, she was never included in the edition's promotions despite her various requests to be included, while other male reporter s were included. It was only shortly before her termination, after months of continuous requests, that Mateo was finally included in the advertisements for this news program.

65.     This same disparate practice took place with WAPA TV channel's "jingle", where Mr. Edgardo Sanabria summoned many of the reporters and talents, but Mateo was totally ignored. The call for this jingle was in the morning when Mateo was already

Complaint
Mateo Alvarado v. WAPA TV *et al.*
Page 17 of 22

on duty and there were other people already working, but she was not allowed to participate in this promotion due to her gender and because she had previously grieved about gender discrimination and about other terms and conditions of employment.

66.     Another example of disparate treatment due to her gender was the fact that Mateo was never assigned a parking spot by WAPA TV while male reporters had assigned parking spots. It is well established that WAPA TV reporters have parking spaces assigned to them. Despite having been a WAPA TV news reporter for almost four years (4) years after having signed her employment contract, Mateo was never assigned a parking spot as promised in WAPA TV's offer to retain her.

67.     WAPA TV discriminated against Mateo due to her gender because there were other similarly situated male reporters, with less seniority than Mateo, which had their assigned parking spaces, one of them a male reporter, with much less time in the company than her. Due to multiple employment resignations by the reporters, there have always been available parking spots, but Mateo was never assigned one, due to her gender.

68.     Other gender discriminatory actions took place when there were special "Noticentro al Amanecer" interviews, they were always assigned to other male colleagues.

69.     When Mateo started the "Noticiero al Amanecer" shift there were always discrepancies with the cosmetic makeup time on the channel and on more than one occasion, Mateo was asked to arrive with makeup on, when her shift started at 4:00 am, which meant that she would have to get up at 2:15 am to be able to put makeup on.

70.    The female new anchors did their makeup at the channel, just like the men, while Mateo was asked to do her own makeup in WAPA TV's vehicle, which affected her image on the air. Ultimately, Mateo would have to do her own makeup in 15 minutes at the station and thereafter leave for her early morning news assignments.

71.    As part of the ongoing pattern of gender discrimination and retaliation against Mateo took place when Hurricane Fiona was threatening Puerto Rico.  A work plan was devised, and she was assigned to cover the town of Naranjito, Puerto Rico with photojournalist Eduardo Padilla. At that same time, colleague Orlando Rivera Martínez was assigned to Ponce and as it turned out, he returned to the channel, without authorization, in the middle of the emergency for which he was verbally reprimanded by Rafael Lenín López.

72.    However, despite leaving an active scene in the middle of an emergency, this male employee kept his job.  Thereafter, a similar situation took place with Mateo's fellow male news reporter Rivera Martínez, when he was assigned to the Caguas command to cover the follow-up of the murder of Angel Manuel Díaz Ramírez (also known as "Goldi"), a music producer from Caguas. After Rivera Martinez' news interventions in the afternoon, he returned to the TV station without instructions from the News Table and the videos of one of those arrested for this crime was lost. This event did not have any major consequences on Mateo's male colleague nor his photojournalist, as they both kept their jobs and were not admonished.

73.    During the month of July 2024, Mateo was instructed to anchor the "Noticentro al Amanecer" news program along with Jorge Gelpí Pagan. After the news program concluded, Mateo was summoned to Mrs. Niria Ruiz' office, where she was

congratulated on her performance during the newscast. While at her office, Ruiz instructed Mateo to sit in such a way that her belly was not shown as she did not like the way Mateo's body looked while she was on the air.

74.    Ruiz further stated that Mateo should sit up with her back straight. This comment about Mateo's body and weight had never been expressed to her by her work colleagues. Ruiz further remarked to Mateo that she looked fat.  These comments were never uttered to male newscasters.

75.    On several occasions, other newscasters had refused to perform their work, and they were not reprimanded. However, in Mateo's case, she was terminated from her employment because she followed Reuel Torres' instructions.

76.    Also, on more than one occasion, Mateo's work colleague, Orlando Rivera Martinez, would record her new stories as his, word for word, because he was instructed to do so by Reuel Torres as "there was nothing new to report." This practice took place when stories and soundtrack for the stories would appear to be written and produced by another colleague; a practice which is unethical and unprofessional. Orlando Rivera was threatened with reprisals if he did not follow through with these instructions. This practice occurred on at least three (3) occasions. When Mateo brought this matter to Orlando Rivera's attention, he informed her that he had no other option because Reuel Torres had forced him to do so.

77.    Continuing with its pattern of gender discrimination and retaliation against Mateo, WAPA-TV did not protect her when she was threatened on the channel by a colleague from the information desk whose initials are RCT. One morning, he summoned Mateo privately and scolded her about a comment she made in a scene relating to the

Complaint
Mateo Alvarado v. WAPA TV *et al.*
Page 20 of 22

fact that they had been sent late to a scene. RCT pointed out that he had ears everywhere

and that whatever Mateo said, he would find out. Given this, he threatened her and told

her that if she repeated any comments, Mateo would "face the consequences."

78.    Mateo then notified what happened to delegate Melvin Orozco, who referred

the case to WAPA TV's Human Resources. However, far from protecting Mateo, Ms.

Verónica Morales pointed out that they spoke with RCT and that he would not do it again.

They never changed Mateo's or her attacker's schedule and left him on his shift, where

he assigned Mateo every day.  RCT was later fired for other reasons.

79.    After her unlawful employment and retaliatory termination of employer,

WAPA TV has hired male news reporters Kelvin Melénez and Isaac Rosado in violation

to Title VII and the Puerto Rico laws cited to herein.

## IV. FIRST CAUSE OF ACTION
### (TITLE VII: Gender Discrimination and Retaliation)

80.    Plaintiff Mateo re-alleges each preceding allegation as if fully set forth

herein and incorporates them hereto by reference.

81.    Defendant WAPA TV has willfully violated Title VII's provisions by engaging

in discriminatory employment practices and retaliation against Mateo on account of her

gender age and because of her engagement in statutorily protected activities.

82.    Mateo hereby requests backpay of all salary compensation that she is

entitled to receive but for the gender discrimination and retaliation she was the victim of.

Mateo further demands that she be compensated for her economical and emotional

damages she has suffered due to Defendant WAPA's egregious unlawful conduct.

Plaintiff Mateo demands compensation for these damages in an amount of not less than $300,000.00, plus reinstatement to her prior job position at WAPA TV.

## V.  SECOND CAUSE OF ACTION
### (Violation to Puerto Rico Laws Nos. 115, 100, 69 and Puerto Rico's Civil Code 2020 for Breach of Contract)

83.    Plaintiff Mateo re-alleges each preceding allegation as if fully set forth herein and incorporates them by reference hereto.

84.    Defendant WAPA TV has violated Mateo' rights secured under Puerto Rico Acts Nos. 115, 100; 69 and Puerto Rico's Civil Code.   Defendant WAPA TV has discriminated against Mateo on account of her gender and further retaliated against her because she engaged in statutorily protected conduct.

85.    Defendant WAPA TV has further breached its contractual obligations with Plaintiff Mateo which have caused her severe economic and emotional damages.

86.    Plaintiff Mateo is also entitled to compensatory damages and back pay. Plaintiff Mateo has suffered economic and emotional damages because of Defendants' unlawful conduct. Mateo demands that these damages be compensated in an amount not less than $300,000.00.  Mateo further demands that she be reinstated to her prior job position at WAPA TV.

**WHEREFORE**, premises considered, Plaintiff Mateo prays that this Honorable Court enter Judgment against WAPA TV and Axis Insurance, granting her the following relief:

(a)    An award of compensatory damages, including but not limited to back pay and front pay and prejudgment interests, of not less than $600,000.00;

Complaint
Mateo Alvarado v. WAPA TV *et al.*
Page 22 of 22

(b)      An award of double compensatory damages under Puerto Rico Acts Nos. 115,100

and 69;

(c)      Reinstatement to her prior job position;

(d)      An award for costs and reasonable attorney fees;

(d)      Any other and further relief, which this Honorable  Court may deem just, and proper;

and

(e)      A trial by jury.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 9th day of October 2025.

_____
**s/ JOSÉ G. FAGOT DÍAZ**

**DESPACHO LEGAL DORNA-LLOMPART**
**USDC PR No. 204112**
**Attorney for Plaintiff**
1353 Ave. Luis Vigoreaux
PMB 805
Guaynabo, PR 00966
Tel:(787) 367-8702
email: jgf@fagot-law.com
josegabrielemilio@gmail.com